## CITY OF SHREVEPORT v. CURCIO.*
### No. 4860.

Court of Appeal of Louisiana. Second Circuit.
Nov. 2, 1934.

Lewell C. Butler and M. T. Monsour, both of Shreveport, for appellant.

John B. Files, of Shreveport, for appellee.

TALIAFERRO, Judge.

Defendant is now, and has been for many years, the owner of lots 1 and 2 in block 8. Allendale Heights subdivision in city of Shreveport. These lots front on Pierre avenue 80 feet, and extend back along Ashton street a distance of 125 feet. Prior to the year 1928 she erected a two-story brick building on the lots, with a front of 30 feet on the avenue and running back on Ashton a depth of 50 feet. At this date the avenue was paved, but Ashton street was not. While the floor of the front of the building was flush with the sidewalk on Pierre avenue, at the rear end it was some 8 or 10 feet above the ground, leaving a large open space between the ground and floor. This space was inclosed by the rear wall of the building and portions of the two side walls, and was utilized as a basement for storing things. On the Ashton street side thereof a door 6 by 7 feet was left. The floor of the basement when constructed was from 3 to 3½ feet below the level of Ashton street. Automobiles could be driven from the street through the door into the basement.

In the latter part of the year 1928, the city of Shreveport, acting under Act No. 187

*Rehearing denied December 5, 1934.

of 1920, as amended by Act No. 115 of 1922, and upon petition of the required number of property owners on Ashton street, between Pierre avenue and Norma street, decided to pave Ashton street between the avenue and Norma street; and in June, 1929, let a contract for the paving to be done. It was found necessary in order to construct a grade of not more than 6 per cent. on the street, sloping from Pierre, to make a fill thereon of from nothing to 4 feet at a point opposite the rear of defendant's building. This fill increased the grade from the street curb to the door of the basement, a distance of 16½ feet, to such extent that vehicles could not go from the street into the basement.

After the paving had been completed, and accepted by the city, in September, 1929, the liability of each abutting owner was ascertained, assessments were made, and the evidence of the lien securing payment of the amounts assessed was registered in the mortgage records of Caddo parish. The amount found due by defendant was $588.45. This amount not having been paid, the city, on January 29, 1931, instituted this suit against defendant to recover judgment therefor, and to enforce the lien and privilege against her property as provided by Act No. 187 of 1920 (section 5).

Defendant, answering articulately, denied all the allegations of the petition, save her ownership of the property described therein. She affirmatively alleged that the fill on Ashton street greatly damaged her property and reduced the sale value thereof, in this: That the loss of rentals on the basement of the building amounted to $1,500, and the decrease in sale value of the entire property was $500. She prays for judgment in reconvention for these amounts. In the alternative, her position is this: That should the court hold she is not entitled to judgment against plaintiff for said amounts, "then she is entitled to have said damage offset any claim that the City may have for paving or grading said street." Against defendant's reconventional demand, plaintiff interposed a plea of prescription of one year. Act No. 26 of 1908. The lower court gave judgment for plaintiff, but also decreed that said judgment was offset and compensated in full because of the damage done to defendant's property as by her alleged. To this extent the plea of prescription was overruled. The court, in effect, held that the damages sustained by defendant were as much as the sum due the city on paving account. Plaintiff appealed from this judgment.

■ The first contention of defendant to be given consideration is that which is directed against the sufficiency of proof adduced by plaintiff in support of the verity and correctness of the amount of the paving claim sued for, and the validity of the lien and privilege relied upon to secure its payment. If the proof offered by plaintiff does not establish its contention in these respects, other questions raised by the pleadings need not now be passed upon.

The record contains the petition of the abutting property owners on that part of Ashton street included in the paving program, asking that the street be paved, and the ordinance of the city declaring that said petition was signed "by more than the number legally required of the property owners whose property abuts upon said street," and in which ordinance the paving was ordered to be done with asphaltic concrete, according to plans and specifications attached thereto and thereby adopted. The ordinance also directs that the paving be done under the provision of Act No. 187 of 1920, and amendments thereto, and that advertisement for bids therefor be made in the official journal of the city. There is also in the record the ordinance of the city accepting bid of Flenniken Construction Company to do the paving in the manner and according to the adopted plans and specifications therefor. The record also contains the plaintiff's ordinance accepting the paving done by the successful bidder, wherein the amounts due by each abutting property owner is definitely fixed, in connection with the description of property owned by each, and assessments against same made and levied. As stated before, this ordinance was duly inscribed in the mortgage records of Caddo parish. The plans and specifications governing the grading of the street and the laying of the paving thereon were not introduced in evidence; neither was the written contract with the Construction Company introduced. It is on account of the absence of these documents from the record, and the failure of the record to disclose the method of arriving at the amount due by defendant for the paving adjacent to her property, the basis of the assessment against her, and the absence from the record of any evidence showing the quality of the paving, or its unit price, etc., that defendant contends that plaintiff's case has not been made out.

Defendant did not petition for the paving to be done. She registered no objection to its being done, nor to the method and manner in which it was done, nor to the character or quality of the paving.

We are of the opinion that the evidence submitted by plaintiff is sufficient, under the circumstances, to prove its case in so far as relates to the amount sued for and the lien and privilege securing its payment. At least, this documentary evidence makes out a strong prima facie case against which defendant has tendered no countervailing proof. Her answer on this subject is merely a general denial. She submits no facts or figures to even indicate that any injustice has been done her, or that the amount charged to her is incorrect to any extent. She does not intimate that any fraud was practiced in the letting of the paving contract or in its execution.

The ordinance fixing the liability of each abutting property owner discloses that all were charged and assessed with the same unit price, based upon frontage, as required by section 2 of Act No. 187 of 1920, as amended by Act No. 115 of 1922, § 3, and as enunciated in Barber Asphalt Pav. Co. v. Watt, 51 La. Ann. 1345, 26 So. 70. If the charge against defendant is incorrect, it is so as to all others liable for the payment of the paving cost in front of their property.

In matters of this kind, property owners should not passively stand by and allow unlawful contracts to be executed, or patently improper or faulty material used in the improvement in which they are interested; objections or protests should be made at such time that corrections would be effective. 112 La. 806; 36 So. 739. When the municipality, through its governing authority, accepts work done under contract with it, and there is a substantial compliance with such contract, in the absence of fraud or material error, the door is closed to individuals to interfere. The acceptance is binding on them. In Town of Minden v. Glass, 132 La. 937, 61 So. 874, 877, the court said:

"In this case the work was performed by the contractors and accepted by the municipal authorities. In the absence of fraud, this acceptance is conclusive that the work was performed in accordance with the terms of the contract. Kelly v. Chadwick, 104 La. 734, 29 So. 295."

To same effect is City of Shreveport v. Chatwin et al., 139 La. 531, 71 So. 791; City of Shreveport v. Levy, 154 La. 953, 98 So. 431; 79 A. L. R. page 1107, note.

It was held in Manning v. City of Shreveport, 119 La. 1044, 44 So. 882, 13 L. R. A. (N. S.) 452, that under article 167 of the Constitution of 1898 (now found in section 2 of the Bill of Rights of the Constitution of 1921), a municipal corporation is responsible for damage to private property resulting from the initial grading of a street, as well as from a change of the established grade; that the measure of such damage is the consequential diminution of the market value of the property or the improvements thereon by reason of the grading. A similar case is that of Landry v. City of Lake Charles, 125 La. 210, 51 So. 120.

The testimony in the case at bar, we think, establishes that defendant's property suffered damage, a diminution in market value because of the high grade in front of the basement door, which made entrance therein practically impossible for vehicles. It is certain that if the basement is ever used for vehicles another door will have to be cut in the rear wall of the building. This would be inconvenient to reach from any direction. The amount of this damage is not clearly proven. We shall not undertake the fixing of the amount thereof because it is our opinion recovery thereof is barred by the prescription of one-year pleaded by plaintiff. It is true that said damages, regardless of the amount of same, existed simultaneously with the paving claim due plaintiff, but we do not think the former compensable as against the latter.

As to the compensable character of debts, article 2209, Civil Code, is controlling. It reads:

"Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable. * * *"

The words "equally liquidated" in this article are self-defining, and mean that if one of the debts is not determined, or susceptible of easy and brief determination, such debt cannot be successfully pleaded as set-off or compensation against one liquidated, certain, and determined. If it requires a lawsuit to determine the exact amount due under a cause of action, certainly it follows that the amount involved in such cause of action is not liquidated, but, on the contrary, is clearly in unliquidated form. And such was the claim of defendant for the damages to her property resulting from the raise in the grade of Ashton street adjacent thereto.

In Berens v. Ker, 28 La. Ann. 96, it was held that it was incompetent to set up in compensation against a promissory note an unliquidated claim for attorney's fees.

In Owen, Adm'r v. Vanderslice, 9 La. Ann. 189, an undetermined amount due on account

for work was held noncompensable against an unconditional promise to pay a certain sum of money.

In Goldman v. Goldman & Masur, 47 La. Ann. 1463, 17 So. 881, it was held that the penal obligation of plaintiff not to engage in business could not be successfully pleaded against the promissory note of defendant on which suit was instituted.

To the same effect is Burbridge & Co. v. Anderson et al., 32 La. Ann. 877, in which the court declared that an unliquidated account could not be used to set off the obligations of a promissory note.

In Franz v. Schiro, 136 La. 841, 67 So. 925, plaintiff sued upon a promissory note. The defense was that the note was in reality owned by the wife of plaintiff, and that she, by certain tortious acts, with the consent and approval of plaintiff, damaged defendant in an amount in excess of the note. Compensation was pleaded. This plea was denied by the court because of the unliquidated character of defendant's claim.

The case of Peterson v. Rabito et al., 164 La. 612, 114 So. 354, is in harmony with the other cases cited.

In the lower court, and here, defendant invoked the doctrine brought down to us from the Romans: "Quae temporalia sunt ad agendum perpetua, sunt ad excipiendum." This doctrine was applied to defendant's case by the judge of the court aquo. In effect it means that defendant could not use her cause of action as a means of attack or sword, but could use it as a shield or defense to the amount of the city's claim. This would unquestionably be true, even though defendant's claim for damages had prescribed, if such claim were "equally liquidated" with that of plaintiff. Oilbelt Motor Co. v. George T. Bishop, Inc., 167 La. 183, 118 So. 881. This, we hold, is not the case.

For the reasons herein assigned, the judgment appealed from, in so far as it decreed that the amount due by defendant to plaintiff herein sued for was offset and compensated by the damages to defendant's property, herein pleaded in compensation, is annulled, avoided, and set aside; and the plea of prescription interposed by plaintiff to the claim of defendant, pleaded in compensation, is sustained. The judgment in favor of plaintiff did not include attorney's fees of ten per cent. fixed by the statute. Plaintiff is entitled to these fees. The judgment in plaintiff's favor is hereby amended so as to carry attorney's fees of 10 per cent. of its amount, principal and interest; and the judgment appealed from, except in the respects herein reversed and amended, is affirmed. Costs to be paid by defendant.